UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LUIS CALDERON,

Petitioner(s),

v.

BRUCE SCOTT, et al.,

Respondent(s).

CASE NO. C26-2419-KKE

ORDER GRANTING HABEAS PETITION

Petitioner has been detained at the Northwest Immigration and Customs Enforcement ("ICE") Processing Center ("NWIPC") since April 2025, and an immigration judge ("IJ") denied bond because he found that Petitioner was a flight risk. The Board of Immigration Appeals ("BIA") affirmed the IJ's flight risk finding. Because the factors considered by the IJ do not rationally bear on Petitioner's likelihood to appear for immigration proceedings, the Court finds that the IJ abused his discretion. The Court will therefore grant the petition for writ of habeas corpus and order the Government to release Petitioner from custody.

## I. BACKGROUND

Petitioner is a native and citizen of Peru currently detained at NWIPC. Dkt. No. 7-1 ¶ 1. Petitioner entered the United States without inspection on or about March 2002. Dkt. No. 6 at 2. Removal proceedings commenced in 2008, and the U.S. Department of Homeland Security ("DHS") released him on bond. *Id.* In 2012, following an arrest for public intoxication, he was again detained and released on a $10,000 bond. Dkt. No. 7-1 ¶ 4.

In 2013, Petitioner filed an application for Special Rule Cancellation of Removal as a noncitizen who has been battered or subjected to extreme cruelty by a United States citizen or permanent resident spouse or parent under Section 240A(b)(2) of the INA. Dkt. No. 7-1 at 6 ¶ 5.

An IJ found him ineligible for that relief, and Petitioner appealed that decision to the BIA. *Id.* ¶¶ 5–6. That appeal remains pending with the BIA after a remand from the Ninth Circuit in July 2025. *See Calderon v. Bondi*, No. 24-2619, 2025 WL 1806596 (9th Cir. July 1, 2025). Petitioner was re-detained by DHS in April 2025 after he was arrested for theft in California. *Id.* His theft charge was ultimately dismissed on July 30, 2025.

This is Petitioner's fourth habeas petition. In the first petition, Petitioner, through counsel, challenged his initial detention, arguing that Due Process required that he be afforded notice and a pre-detention hearing before a neutral decision maker. *Calderon v. Noem ("Calderon I")*, No. 2:25-CV-2136-LK-TLF, 2025 WL 3754042, at *2 (W.D. Wash. Dec. 29, 2025), *appeal dismissed*, No. 26-1267, 2026 WL 1587520 (9th Cir. Apr. 2, 2026). The Court denied the petition, finding that the initial portion of Petitioner's detention was mandatory under the Laken Riley Act ("LRA"), 8 U.S.C. § 1226(c)(1)(E). *Id.* at *4–7. As to whether Petitioner remained subject to mandatory detention under the LRA after his theft charges were dismissed, the Court found the issue was not raised in the habeas petition and declined to address it. *Id.* at *8. Judge King thus denied the habeas petition but stated that "to the extent that [Petitioner] wishes to challenge his current detention, he is free to file a new habeas petition pursuant to Section 2241." *Id.*

Petitioner filed a second habeas petition through counsel, again challenging the lawfulness of his re-detention and arguing that the LRA was unconstitutional as applied to him at the time of the initial detention because he had not been convicted of a qualifying crime. *Calderon v. Noem ("Calderon II")*, No. 2:26-CV-00352-BAT, 2026 WL 507683, at *1–3 (W.D. Wash. Feb. 24, 2026). Although Judge Tsuchida denied Petitioner's re-detention claim pursuant to the abuse of the writ doctrine and rejected his LRA argument, he ordered the Government to provide Petitioner with a bond hearing where the Government would bear the burden to "show [that] Petitioner is a danger or risk of flight by clear and convincing evidence." *Id.* at *5. As Judge Tsuchida explained,

a bond hearing was appropriate because "the nature" of the crime Petitioner was charged with—misdemeanor theft—"does not on its face suggest Petitioner is a danger or a flight risk." *Id.* And the fact that the charge was dismissed removed Petitioner "from the category of noncitizens who must be mandatorily detained and further suggests there is the possibility that his arrest and the charges were unfounded." *Id.* Thus, Judge Tsuchida concluded it was "just and reasonable for Petitioner to be provided a bond hearing so an [IJ] can make factual determinations and determine whether Petitioner should be released or detained further." *Id.*

Petitioner's bond hearing was held on March 17, 2026.[1] At the conclusion of the hearing, the IJ denied bond, finding Petitioner to be a flight risk. Dkt. No. 7-1 at 8 ¶ 16. A few weeks after Petitioner filed an appeal with the BIA, the IJ issued a written memorandum explaining his decision to deny bond. *Id.* at 12–15. The IJ highlighted various equities that weighed in favor of granting bond, including Petitioner's "lengthy residence in the United States, his work in the arts, his volunteer work, and his community support." *Id.* at 15. However, the IJ also noted Petitioner's "lengthy and extensive criminal history" and that "[s]everal of his criminal arrests occurred after [Petitioner] was released on a custody bond in 2012 during the pendency of his removal proceedings." *Id*. The IJ further noted that Petitioner's "opportunities for relief from removal are speculative" where his case was remanded by the Ninth Circuit, but … remains pending before the BIA." *Id.* Thus, "[g]iven [Petitioner]'s speculative opportunities for relief from removal, his criminal history, and his failure to follow the law while previously out on bail," the IJ found that "DHS has met its burden to show that [Petitioner] is a flight risk by clear and convincing evidence." *Id.*

[1] No transcript is available from this hearing because the IJ did not make a contemporaneous record.

Petitioner challenged the IJ's bond determination in his third habeas proceeding, which he commenced through counsel on May 4, 2026. *Calderon v. Mullin ("Calderon III")*, No. 2:26-CV-01512-GJL, 2026 WL 1487774, at *1 (W.D. Wash. May 28, 2026). On May 28, 2026, Judge Leupold denied Petitioner's habeas petition for failure to exhaust his administrative remedies where Petitioner's appeal of the IJ's bond determination to the BIA was still pending. *Id.* The Court noted that Petitioner could refile his claims in a separate action "once available administrative remedies are exhausted." *Id.* at *3.

On July 10, 2026, Petitioner filed the instant habeas case, challenging the IJ's decision denying him bond as legally erroneous. Dkt. No. 1. The Government filed a Return, arguing only that the Court should require Petitioner to exhaust his administrative remedies (i.e., wait for the BIA to resolve Petitioner's appeal of the bond determination) before reaching the merits. Dkt. No. 6 at 6–7. The Government further argued that the petition should be dismissed as violative of the abuse of the writ doctrine, where Petitioner had previously challenged the IJ's bond determination and was denied relief based on his failure to exhaust his administrative remedies. *Id.* at 8–9 (discussing *Calderon III*, 2026 WL 1487774, at *3). The Government did not respond to Petitioner's arguments challenging the bond determination as legally infirm or otherwise address the merits of the IJ's order denying bond.

On August 19, 2026, Petitioner filed his traverse. Dkt. No. 11. He noted that on July 28, 2026—four days after the Government filed its return—the BIA issued a final decision affirming the IJ's bond determination and dismissing Petitioner's appeal. *Id.* at 2; *see also id.* at 33–36 (BIA decision). The BIA affirmed the IJ's order, concluding that Petitioner's "lengthy criminal history, which includes multiple arrests and convictions between 2007 and 2025, the fact that he was previously granted release on bond and then subsequently reoffended, as well as the speculative

nature of his separate removal proceedings, outweigh the positive equities such that DHS has met its burden" in demonstrating that Petitioner "poses a flight risk." *Id.* at 34–35.

Given that the BIA issued its order after the Government filed its Return, and the Government had not addressed the merits of the IJ's bond determination, the Court ordered supplemental briefing from both parties addressing the merits of the IJ's bond determination. The parties filed their supplemental briefs (Dkt. Nos. 13, 15), and the petition is now ripe for the Court's consideration.

## II. ANALYSIS

To succeed on a habeas petition, a petitioner must show he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and … the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

As the Court explained in *Calderon II*, the burden at the bond hearing was on the Government to prove by clear and convincing evidence that Petitioner poses a flight risk or a danger to the community. 2026 WL 507683, at *5. The Supreme Court has explained that the clear and convincing evidence standard requires sufficient evidence to "place in the ultimate factfinder an abiding conviction" that a factual contention is "highly probable." *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984) (citation omitted). This is "a high burden and must be demonstrated in fact, not 'in theory.'" *Obregon v. Sessions*, No. 17-cv-01463-WHO, 2017 WL 1407889, at *7 (N.D. Cal. Apr. 20, 2017) (quoting *United States v. Patriarca*, 948 F.2d 789, 792 (1st Cir. 1991)).

A district court reviews an IJ's bond determination as to dangerousness and flight risk for abuse of discretion. *See Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024). When reviewing for abuse of discretion, the district court does not reweigh the evidence, but rather determines whether the IJ applied the correct legal standard. *See id.* at 785. In making bond determinations, IJs consider the so-called "*Guerra* factors":

> (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen's] length of residence in the United States; (3) the [noncitizen's] family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen's] employment history; (5) the [noncitizen's] record of appearance in court; (6) the [noncitizen's] criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen's] history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen's] manner of entry to the United States.

*In Re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006).

"In order to sustain a permissible flight risk finding, any factor considered by an IJ must rationally bear on a noncitizen's likelihood to appear for immigration proceedings." *Rodriguez-Pineda v. Hernandez*, No. C26-2367-MLP, 2026 WL 2321531, at *4 (W.D. Wash. Aug. 11, 2026). "District courts look to whether the IJ explained their reasoning and conclusions, finding that IJs abused their discretion where no reasoned connection was drawn between the IJ's factual findings and determination of flight risk." *Shevchuk v. Scott*, No. 2:26-CV-01872-SAB, 2026 WL 1802094, at *1 (W.D. Wash. June 23, 2026). Here, the IJ principally relied on Petitioner's criminal history in concluding that he posed a flight risk. Crucially, however, the IJ did not make a finding of dangerousness based on this criminal history. "To credit criminal history as evidence of flight risk, rather than dangerousness, without an obvious nexus to flight risk, the IJ must explain what nexus exists." *Claros v. Albarran*, No. 25-CV-09473-EMC, 2026 WL 2364813, at *7 (N.D. Cal. Aug. 14, 2026). As the Court explains below, Petitioner's criminal history, the majority of which

is quite dated, does not bear an obvious nexus to flight risk, nor did the IJ sufficiently identify or explain any such nexus.

The IJ considered Petitioner's criminal arrests, but did not explain why these arrests, many of which occurred over ten years ago[2] and were dismissed, and none of which led to convictions, constitute evidence of flight risk. Dkt. No. 7-1 at 14. *See Fletes-Velasquez v. Hernandez*, No. C26-1908 TSZ, 2026 U.S. Dist. LEXIS 145147, at *8 (W.D. Wash. June 29, 2026) (holding that "immigration judge inappropriately considered petitioner's arrests, which never ripened into convictions" and "failed to explain how an arrest for assault, as opposed to attempting to elude a pursuing police vehicle, bail jumping, escape, resisting arrest, or the like, constitutes evidence of a 'flight risk'"). The IJ also cited Petitioner's criminal convictions, all of which are over ten years old, including "driving under the influence (DUI) (dismissed after completion of probation) (2007), 2 convictions for public intoxication (2012), a probation violation (2008), and a conviction for battery under California Penal Code (PC) section 242 (2015) (dismissal after early completion of probation)." Dkt. No. 7-1 at 14. Again, the IJ failed to explain how these convictions, many of which were dismissed, and none of which involved any sort of flight or failure to appear, bear any nexus to Petitioner's current flight risk. *See Alcaraz Garcia v. Hernandez*, No. 2:26-CV-01432-TLF, 2026 WL 1724216, at *6 (W.D. Wash. June 15, 2026) ("The IJ fails to explain why a DUI arrest from 25 years ago that was dismissed … and for which there is no evidence petitioner ever failed to appear for proceedings related to that incident – is in any way relevant to whether petitioner would pose a risk of flight.").

Furthermore, the record does not show the IJ considered the "recency" or remoteness of the criminal activity, as he was required to do. *See Martinez*, 124 F.4th at 783 (in considering the

[2] Petitioner was most recently arrested for theft on March 25, 2025, but that charge was ultimately dismissed. Dkt. No. 7-1 at 6 ¶¶ 8–9.

noncitizen's criminal record as a factor, the IJ must consider "the extensiveness of criminal activity, *the recency of such activity*, and the seriousness of the offenses" (emphasis added) (citing *In re Guerra*, 24 I. & N. Dec. at 40)); *see also Padilla Paz v. Hernandez*, 833 F. Supp. 3d 1180, 1190 (W.D. Wash. 2026) (finding that IJ abused its discretion where he failed to "consider[] the 'recency' (or more aptly, remoteness)" of petitioner's criminal conviction from "twelve or more years ago"). Petitioner's most recent conviction was for battery in 2015—over ten years ago—and was ultimately dismissed after early completion of probation. But the IJ's decision lacks any assessment of the remoteness of the criminal activity, nor does it provide a "reasoned connection" between this battery conviction or any of Petitioner's criminal history and the IJ's ultimate "determination of flight risk." *Shevchuk*, 2026 WL 1802094, at *1; *see also Claros*, 2026 WL 2364813, at *7 (finding that petitioner's battery conviction had "no obvious nexus to his current flight risk").

The IJ also relied on the fact that "[s]everal of [Petitioner's] criminal arrests occurred after [Petitioner] was released on a custody bond in 2012 during the pendency of his removal proceedings" to conclude that Petitioner was "an exceedingly poor bail risk." Dkt. No. 7-1 at 15. But again, the IJ failed to explain how this dated criminal history constituted clear and convincing evidence that Petitioner currently poses a risk of flight that could not be mitigated by conditions of release. *See Shevchuk*, 2026 WL 1802094, at *2 (finding that IJ abused its discretion in relying on Petitioner's criminal history for flight risk determination where IJ did not consider "possible conditions of release that could mitigate any flight risk"). For example, the IJ did not engage in any analysis of potential alternatives to detention, "such as a GPS ankle monitor, home detention, [or] enrollment in the Intensive Supervision Appearance Program ('ISAP')." *Heboud v. Blanche*, No. 5:26-CV-03484-KS, 2026 WL 2494985, at *6 (C.D. Cal. Aug. 24, 2026). The IJ's finding of flight risk without consideration of these alternatives or specific conditions of release to mitigate

risk of flight constituted an abuse of discretion. *See, e.g.*, *id.*; *Poot v. Mullin*, No. 5:26-CV-3321-CTS, 2026 WL 2659590, at *9 (C.D. Cal. Sept. 9, 2026); *Shevchuk*, 2026 WL 1802094, at *2.

Further, the IJ inappropriately relied on his own assessment that Petitioner's potential for relief in his immigration case is "speculative." Dkt. No. 7-1 at 15. "Although an [IJ] may consider the likelihood of receiving relief based on specific facts presented in a particular case, the [IJ] here did not explain how the relative strengths or weaknesses of Petitioner's claims for relief outweighed the specific circumstances presented in this case." *Poot*, 2026 WL 2659590, at *9 (quoting *Gonzalez Reyes v. Rios*, No. EDCV 26-3830 JGB (DFM), 2026 WL 2190830, at *5 (C.D. Cal. July 28, 2026)). The IJ failed to explain why Petitioner's eligibility for relief was speculative and never addressed Petitioner's pending request for Special Rule Cancellation of Removal, nor the fact that Petitioner was successful before the Ninth Circuit and his case has now been remanded to the BIA. And "even assuming Petitioner's eligibility for relief were speculative, this finding alone would not be sufficient to meet Respondents' burden of proof by clear and convincing evidence." *Espada Hernandez v. Warden of Adelanto ICE Processing Ctr.*, No. 5:26-CV-02231-AJR, 2026 WL 1362396, at *7 (C.D. Cal. May 11, 2026).

Finally, the IJ's flight risk finding is further unsupported by the record, which reflects that Petitioner has resided in the United States for over 24 years, has maintained a stable residence and employment, is a long-term member of his community, has familial ties in the United States, and has submitted numerous letters of support from others in the community. As the IJ noted, "Petitioner is a supporter of a children's hospital and has volunteered to teach tennis to children." Dkt. No. 7-1 at 14. He also serves as the sole provider and caretaker for his two elderly parents. Dkt. No. 1-5 at 2. The record therefore reflects that Petitioner has every incentive to participate in future immigration hearings, and the Government has not provided any evidence that Petitioner has ever failed to appear at any court hearings or ever tried to flee authorities.

In summary, upon considering the *Guerra* factors, the Court finds that this record unequivocally contradicts the IJ's flight-risk finding. The only *Guerra* factor analyzed by the IJ (criminal history) bears no rational nexus to Petitioner's propensity to appear at future immigration proceedings, and all the other factors strongly weigh in Petitioner's favor. This analysis is equally applicable to the BIA's decision, which affirmed the IJ's order and relied on the same factors to conclude that Petitioner posed a flight risk. Dkt. No. 11 at 34–35 (concluding that Petitioner's "lengthy criminal history, which includes multiple arrests and convictions between 2007 and 2025, the fact that he was previously granted release on bond and then subsequently reoffended, as well as the speculative nature of his separate removal proceedings, outweigh the positive equities such that DHS has met its burden" in demonstrating that Petitioner "poses a flight risk"). Thus, because the BIA adopted the IJ's flawed analysis, it likewise abused its discretion for the same reasons. *See Vargas v. Wolf,* No. 219CV02135KJDDJA, 2020 WL 1929842, at *8 (D. Nev. Apr. 21, 2020) (where BIA committed "same" error as the IJ, concluding that both "bond determinations were legally incorrect and constitutionally deficient"); *cf. Doe v. Becerra*, No. 2:25-CV-00647-DJC-DMC, 2026 WL 1735097, at *2 (E.D. Cal. June 16, 2026) (concluding that analysis as to the IJ decision "applies equally to the BIA's decision" where BIA affirmed IJ's denial of bond).

For these reasons, the Court finds that the IJ's denial of bond—and the BIA's subsequent affirmance—amounted to an abuse of discretion. Petitioner has now been detained for nearly 18 months, and his continued detention would serve no immigration purpose. The Court will therefore order Petitioner's release. *See Garcia Miranda v. Hernandez*, No. 2:26-cv-00906 JNW, 2026 WL 1328227, at *4–5 (W.D. Wash. May 13, 2026); *Escalante Perez v. Hernandez*, No. C26-0956 TSZ, 2026 WL 1004559, at *2 (W.D. Wash. Apr. 14, 2026); *Poot*, 2026 WL 2659590, at *10.

## III. CONCLUSION

Accordingly, the Court ORDERS as follows:

(1) The Petition for a Writ of Habeas Corpus (Dkt. No. 1) is GRANTED.

(2) The Government SHALL release Petitioner from detention **no later than ONE DAY from the date of this order**, under appropriate conditions of release.

(3) **No later than October 7, 2026**, the Government SHALL provide the Court with a declaration confirming that Petitioner has been released from custody and informing the Court of the date and time of his release.

Dated this 5th day of October, 2026.

Kymberly K. Evanson
United States District Judge